## DUNHAM *a.* WATERMAN.

*Court of Appeals ; April Term,* 1858.

JUDGMENT BY CONFESSION.—REMEDY AGAINST FRAUDULENT JUDG-
MENT.—ASSIGNMENT FOR BENEFIT OF CREDITORS.—FRAUD.

A statement for judgment by confession, stated as the facts out of which the in-
debtedness arose, that " A promissory note made by me, bearing date the 22d
day of August, 1851, was given by me to said plaintiffs on settlement of account
between them and me on the 22d day of that month ; whereon, for value re-
ceived, I promised to pay to the order of said plaintiffs said sum of," &c.

Held, that the statement was insufficient, and conveyed no information of any
real value. Something should be stated as to the nature of the account, and
the time when it accrued.

*It seems,* that although the language of section 383 of the Code—which prescribes. the contents of a statement of judgment by confession—is widely different from that of the act of 1818 (*Laws of* 1818, *ch.* 259, § 6), which the Code superseded ;. yet, when it is considered that the object of both statutes was precisely the same, that to accomplish this object much of the particularity of statement required by the earlier statute is necessary, and that, in contemplation of law, the Legislature, in enacting the later, had the earlier statute before them, the Code should be deemed to require by implication what was in terms required by the earlier statute.

An insufficiency in the statement of the facts out of which the indebtedness arose, in a confession under the Code, is not a mere irregularity for which the only remedy is by motion to set aside the judgment; but the requirements of the section virtually constitute a condition precedent to the right of the party to confess judgment at all; and its violation forms a proper subject of equitable jurisdiction; and a subsequent judgment creditor may institute a creditor's. action to have such a judgment set aside.

The case of Chappell *a.* Chappell (2 *Kern.,* 215) explained and followed.

The history of the law of voluntary assignments for the benefit of creditors.

A manufacturer of steam-engines made a voluntary assignment for the benefit of creditors; and having on hand at his factory, at the time of making the assignment, a number of engines in different states of forwardness in the course of their construction, by the assignment he authorized the assignees to apply the proceeds of the sale of the assigned property, among other purposes, to pay the expenses of the management of said business, or of completing or fitting up for sale any of the property, or working up materials, so as to realize the greatest amount of money therefrom, as in the judgment of the assignees should seem most advisable.

*Held,* that the assignment was fraudulent and void. Such assignments should. not be permitted to substitute the will of the debtor or of his assignees, or even their discretion, for the judgment of the courts as to the time or manner of ap-propriating the property to the payment of debts. The debtor can authorize no delay, except such as is necessarily incidental to the creation of the trust.

*It seems,* that a debtor who makes a voluntary assignment for benefit of creditors,. may direct, in *general terms,* a sale of the property and collection of the dues assigned, and may also direct to what debts, and in what order, the proceeds shall be applied; but that beyond this he can prescribe no condition whatever· as to the management or disposition of the assigned property.

The case of Cunningham *a.* Freeborn (11 *Wend.,* 241) explained and qualified.

Although, under 2 Revised Statutes, 137, fraud in all cases is a question of fact, yet, wherever an assignment contains provisions which are calculated *per se* to hinder, delay, or defraud creditors, although the fraud must be passed upon as· a question of fact, it nevertheless becomes the duty of the court to set aside the· finding of it in opposition to the plain inference to be drawn from the face of the instrument.

A party who purchased property at a sale under a fraudulent judgment and as-signment, but who did not participate in the fraud, and purchased in good faith,. should not be held liable in a creditor's action to set aside the judgment and assignment, and reach the property.

Appeal from a judgment of the New York Superior Court.

This was a creditor's action brought against Waterman, who was the judgment debtor, J. and G. Hecker, who were his prior judgment creditors and assignees; and one Rowell, who had purchased property of the debtor at a sale made by the assignees.

On the 25th of August, 1851, Waterman confessed a judgment to the Heckers in the following words:—

SUPREME COURT, CITY AND COUNTY OF NEW YORK.

| | |
|---|---|
| John Hecker and George Hecker, *against* Henry Waterman. | Statement and confession of judgment without action. |

I do hereby confess judgment in this case in favor of John Hecker and George Hecker for the sum of five thousand two hundred and fifty-one dollars and one cent, and authorize judgment to be entered therefor against me.

This confession of judgment is for a debt justly due to the plaintiffs, arising upon the following facts :—A promissory note made by me, bearing date the twenty-second day of August, 1851, was given by me to the said plaintiffs on settlement of accounts between them and me on the twenty-second day of that month. Whereon, for value received, I promised to pay to the order of the said plaintiffs the said sum of five thousand two hundred and fifty-one dollars and one cent, one day from its date.                              HENRY WATERMAN.

City and County of New York, ss. :

Henry Waterman, the defendant above named, being duly sworn, says that the facts stated in the above confession are true, and further he says not.          HENRY WATERMAN.

Sworn to before me, the 25th }
    day of August, 1851,      }
                    MARCUS P. FERRIS,
                        Commr. of Deeds.

[Endorsed.]

Supreme Court.—John Hecker and George Hecker *a.* Henry Waterman.—On filing the within statement and confession, it is adjudged by the court that the plaintiffs do recover against the defendants the sum of five thousand two

hundred and fifty-one dollars and one cent ($5,251.01), with five dollars costs, and one dollar disbursements, making in all, $5,257.01.

GEORGE W. RIBLET, Clerk.<br>J. NEILSON, Plffs' Att'y.

On the same day, Waterman made a voluntary assignment to the Heckers, in trust for his creditors, with the usual powers to convert the assigned property into cash, and to distribute the proceeds among the creditors, with preferences; which assignment contained the following clauses:—

" This conveyance and assignment is in trust, nevertheless, that the said John Hecker and George Hecker shall sell and dispose of the said property, collect the said debts, or such of them as shall be collectable, and compromise, as to them shall seem best, such of them as shall be doubtful or not collectable, and apply the proceeds to the following purpose, that is to say:

" *First.*—To pay any such sum or sums of money as they may find proper and expedient in and about the management of the said property or payment of hands employed or to be employed in and about the same, or in the business of completing the manufacture of any of the said property, or fitting the same for sale, of working up materials, &c., so as to realize the greatest possible amount of money therefrom, as in the judgment of the said John Hecker and George Hecker shall seem most advisable, including any other expenses they may incur in the premises, with their reasonable charges."

An execution was issued on the judgment on the same day, and a levy was made upon the personal property of Waterman. On the 14th day of November, 1851, the sheriff sold the property thus levied upon for sufficient to satisfy the judgment. At the sale the defendant Rowell purchased goods to the amount of $395.81. One Wright purchased to the amount of $1,406.60, and one Raney to the amount of $1,593.60. The rest of the goods were purchased by other parties.

The Heckers assumed the amount of the bids of Rowell, Wright, and Raney, and the amount was applied upon the execution. The Heckers then sold the property thus bid off, to the defendant Rowell, who paid them for it, and still held it when this action was brought.

Dunham *a.* Waterman.

The plaintiffs having recovered a judgment against the defendant Waterman on the 10th day of December, 1851, upon which an execution was afterwards issued and returned unsatisfied, commenced this action to set aside the judgment in favor of the Heckers against Waterman, and the assignment, on the ground of fraud; also to set aside the sale to the defendant Rowell, and to reach said property in his hands.

The cause was first tried at special term before Mr. Justice Duer, who held that the assignment was void on its face, and the judgment also was void.

On appeal from that decision, the general term of the Superior Court reversed the judgment (3 *Duer*, 166), and sent the cause to a referee for trial.

On the trial before the referee, it appeared that the assignor was a manufacturer of steam-engines, and that at the time of making the assignment he had on hand, at his factory, several machines in different states of forwardness, and that the assigned property would be much more valuable and productive to the creditors if the machines could be finished before selling them. In consequence of which, the assignees employed the assignor to finish the engines; and when they were finished, they were sold by the assignees, both upon the execution on their judgment and under the assignment, and the avails of the sales, after paying expenses, were retained by the assignees to pay their preferred debt. Upon the testimony taken by him, the referee reported that there was no fraud in fact. Whereupon the general term, in pursuance of its previous ruling, affirmed the report of the referee, and gave judgment for the defendants. The plaintiffs appealed to the Court of Appeals.

*J. W. Edmonds*, for the plaintiffs, appellants, made the following points:

The questions raised by this appeal are: *First.* Do not the facts, as found below, show fraud in fact? *Second.* Does not the assignment contain a provision which is of itself a fraud in law?

I.—As to the fraud flowing from the facts as found. 1. The assignment was of unfinished machinery and of uncollected debts. 2. The assignor was employed by the assignees to finish the machinery and to collect the debts. 3. He thus remained,

for a period after the assignment, as completely in possession of the assigned property as he was before the assignment. 4. This possession vitiates the assignment. (Hart *a*. Crane, 7 *Paige*, 37 ; Connah *a*. Sedgewick, 1 *Barb*., 210 ; Grover *a*. Wakeman, 11 *Wend*., 187.)

II.—As to the fraud flowing from the assignment itself. This has two aspects : one, that it is collateral to the judgment ; and the other, that it provides for finishing the machinery. 1. As to its being collateral to the judgment. *a*. The judgment is to pay the assignees only, but the assignment is general for all creditors. *b*. The rule of law is, that the assignees, by accepting the assignment, waive their judgment. (Hawley *a*. Mancius, 7 *Johns. Ch. R.*, 174.) *c*. This assignment is in conflict with, and attempts to abrogate this rule of law. *d*. It is therefore void in this respect, and being void in part, is void *in toto*. 2. As to its providing for finishing the machinery : *a*. It clothes the assignees with two rights, which neither the court nor creditors can control, namely, the right to expend the assigned funds in finishing the work, instead of paying it to the creditors ; and the right to postpone a sale of the assigned property until the machinery shall be finished. *b*. This delay and appropriation is not a mere necessary consequence of what may lawfully be done by a failing debtor, but is the primary object of the assignment. (Nicholson *a*. Leavitt, 2 *Seld*., 516.) *c*. The debtor is bound to pay instantly, and the creditor has a right to demand instant payment. This provision conflicts both with this duty and this right. If allowed at all, for how long time may it cause delay ? *d*. The provision may be made to operate to increase the surplus to be paid to the assignor. (Hart *a*. Crane, 7 *Paige*, 37.) *e*. It takes from the court and the creditors the power over the property, and gives it to the debtor, or to assignees of his choosing, and in his interest, viz. : the power to say when it shall be sold, and to say whether a smaller sum is not better now than a larger sum by and by. *f*. The court cannot override the discretion given to the assignees, but must enforce it. (Hart *a*. Crane, 7 *Paige*, 37 ; Meachem *a*. Stearns, 9 *Ib*., 405 ; Burdick *a*. Hanting, 12 *Barb*., 168 ; S. C., 2 *Seld*., 522 ; Barney *a*. Griffin, 2 *Comst*., 365.) *g*. The creditors cannot claim under the assignment without confirming this discretion in the assignees, consenting to this appropriation of the funds, and

agreeing to wait until the work is finished. (Litchfield *a.* White, 3 *Seld.*, 438.) *h.* All this is interfering with and enlarging the only right the debtor has, namely, to make an assignment, choose his own assignee, and prefer some creditor. Further than this he cannot go. *i.* Any attempt to go further, whether express or implied, and whatever the pretence, is *per se* an attempt to hinder and delay creditors, and vitiates the whole assignment. (Nicholson *a.* Leavitt, 2 *Seld.*, 516.)

III. The action aims also at setting aside the judgment. To the judgment there are three objections. 1. It is void, because not entered up in compliance with the statute. (*Code*, § 383.) 2. The debtor remained in possession. (Burnell *a.* Johnson, 9 *Johns.*, 243; Storm *a.* Wood, 11 *Ib.*, 110.) 3. The judgment was waived by the acceptance of the assignment. (Hawley *a.* Mancius, 7 *Johns. Ch. R.*, 174.)

*J. Crombie*, for the defendants, respondents, made the following points :—

I.—The plaintiffs having made no objection before the referee to the validity of the judgment on account of its want of conformity to the requirements of the Code, and having made no objection to the validity of the assignment on account of any thing apparent on its face, will not be allowed to avail themselves of such objections here. (Merritt, Executor, &c., *a.* Seaman, 6 *Barb.*, 330; Pomeroy *a.* Underhill, 7 *Hill*, 338; Jenks *a.* Smith, 1 *Comst.*, 90; Morris *a.* Hasson, 4 *Seld.*, 204; Williams *a.* Larkin, 3 *Den.*, 114; Labron *a.* Woram, 1 *Hill*, 91; Whiteside *a.* Jackson, 1 *Wend.*, 418.)

II.—The only question, therefore, which this case presents for discussion or decision in this court, is, whether the facts found by the referee warrant his conclusions of law. His finding upon the facts will not be reviewed by this court. (Davis *a.* Allen, 3 *Comst.*, 168; Griscom *a.* The Mayor of New York, 2 *Kern.*, 568.)

III.—If, however, the plaintiffs are at liberty on this appeal to attack the judgment in favor of the Heckers on account of its want of conformity to the requirements of the Code,—and this court holds that the judgment was void as against the creditors of Waterman on that account,—still the decision of the referee was correct, and the judgment below should be affirmed. 1. The title of the defendant Rowell to the property purchased

by him from the Heckers, which was sold on the execution upon the judgment, cannot be affected if the judgment should now be set aside. The referee has found that he was a *bona fide* purchaser of the property from the Heckers, and they acquired title to the property from purchasers who bought upon the sale under the execution while the judgment was in force. (Root *a.* French, 13 *Wend.*, 570; Jackson *a.* Bartlett, 10 *Johns.*, 184; 2 *Cow. & H., Notes to Phill. on Ev.*, 855; Jackson *a.* Roosevelt, 13 *Johns.*, 96.) 2. The judgment was satisfied by the sale under the execution before the plaintiffs obtained a judgment, and the Heckers will not now be compelled to pay to the plaintiffs the amount they realized upon their debt under the sale upon the execution, even if the judgment was void as to creditors. (Fort *a.* Fort, 9 *Wend.*, 442; Wintringham *a.* Wintringham, 20 *Johns.*, 296; Seaving *a.* Brinkerhoff, 5 *Johns. Ch. R.*, 329.)

IV.—The judgment in favor of the Heckers was not fraudulent. The amount for which the judgment was confessed was due them. The judgment was entered upon a defective statement of the facts out of which the indebtedness arose, and was, therefore, merely irregular. The plaintiffs cannot impeach the judgment by a suit in equity, for this irregularity. Their remedy, if they had any, was by motion to set aside the judgment. The court could then have granted them relief upon such terms as should be just, and the Heckers might have moved to correct the error. (Shottenkirh *a.* Wheeler, 3 *Johns. Ch. R.*, 275; Frazier *a.* Frazier, 9 *Johns.*, 80; De Riemer *a.* Cantillon, 4 *Johns. Ch. R.*, 85; Lawless *a.* Hackett, 16 *Johns.*, 148; Chappell *a.* Chappell, 2 *Kern.*, 215.)

V.—The assignment from Waterman to the Heckers was not void for any thing appearing on the face of the instrument. (Cunningham *a.* Freeborn, 11 *Wend.*, 240; Hitchcock *a.* Cadmus, 2 *Barb.*, 381.)

BY THE COURT.—SELDEN, J.—The plaintiffs, as subsequent judgment creditors of the defendant Henry Waterman, seek to set aside the judgment confessed, and the assignment made by Waterman to the defendants George and Henry Hecker on the 23d of August, 1851, as fraudulent and void. The objection to the judgment is, that it was confessed without a compliance with the second subdivision of section 383 of the Code. Pre-

vious to the judgment of this court in the case of Chappell v. Chappell (2 *Kern.*, 215), the true interpretation of the subdivision in question was involved in much obscurity and doubt, and several conflicting opinions had been made on the subject by different branches of the Supreme Court. It was, however, settled in the case referred to that the object of the provision was the same as that of section 6 of chapter 259 of the Laws of 1818, viz. : to protect the other creditors of the judgment debtor against fraud, " by compelling the parties to spread upon the record a more particular and specific statement of the facts out of which the indebtedness arose."\* (Per Gardiner, J.)

It was accordingly held in that case, that a statement setting forth that the confession was for a debt justly due to the plaintiff upon two promissory notes, payable to the plaintiff or bearer, stating the date, amount, and time of payment of such notes, and that the same were " justly due" to the plaintiffs, was not a sufficient compliance with the provision in question. The only material difference between the statement in that case and in this is, that here it is stated that the note described was given by the defendant in the judgment to the plaintiff therein, on settlement of accounts between them, on the 22d day of August, 1851, the day on which the note was dated. I do not see that the allegation, that the note was given on settlement of accounts, can add very materially to the information which the statement affords. In the case of Lawless v. Hacket, which arose under the act of 1818, the court said the specification ought to be so particular and precise as to apprise all parties interested of the nature and consideration of the debt. A statement as general as the common counts in a declaration is not sufficient. It ought to be as special and precise as a bill of particulars. If the reasoning of the court in that case is applicable to cases arising under the Code, as was held by Gardiner, J., in Chappell v. Chappell (*supra*), then it is clear that the statement in the present case is wholly defective. It is true there is a wide difference in phraseology between the act of 1818 and the section of the Code in question. The former required a " particular" statement and specification of " the nature and consideration" of the debt

---

\* See all the cases on this subject collected, and the rules which they establish deduced, in *Abbotts' Forms of Pleadings,* 503, 509.

or demand; and in case such demand should arise upon a note, bond, or other specialty, the origin and consideration of the same was required to be "particularly set forth," while the Code, *in terms,* simply required a statement " of the facts out of which the indebtedness arose."

But when it is considered that the object of both statutes was precisely the same; that to accomplish this object much at least of the particularity contemplated by the act of 1818 would be necessary; and that, in contemplation of law, the Legislature in enacting the section in question had the act of 1818 before them; it would seem that the Code must have been intended to require by implication what is in terms required by the previous statute. It is unnecessary, however, to go to this extent here. A requirement far short of this would be fatal to the judgment in this case. A mere statement that the note was given upon a settlement of accounts, conveys no information of any value. Something at least should be stated as to the nature of the account, and the time when it accrued; even if all the minuteness necessary in a bill of particulars should not be required.

But it is contended by the respondent's counsel, that, conceding the statement upon which the judgment was confessed to be defective, such defect amounts merely to irregularity, for which the only remedy was by motion to set aside the judgment. This position cannot be maintained. It is true that for a mere irregularity in a matter of practice, the proper remedy is by motion. But the defect here is of a different nature. The object of the statute being to protect the creditors of the party confessing the judgment, against fraud, its violation forms a proper subject of equitable jurisdiction. The provision does not relate to a mere matter of form, or the manner of conducting a judicial proceeding, but is one which affects substantial rights. It virtually constitutes a condition precedent to the right of the party to confess the judgment at all. Although the Code does not, *in terms,* enact, as was done by the act of 1818, that a judgment confessed, without a compliance with its provisions, shall be " decreed and adjudged fraudulent" in respect to other *bona fide* judgment creditors; yet, considering the object in view, it is plain that such must be its meaning.

The decision in this court of Chappell *v.* Chappell (*supra*) was,

in substance, that the judgment having been confessed without a compliance with the provision of the Code, it was to be deemed fraudulent and void as to the other judgment creditors of the defendant; and that the Supreme Court was right in setting it aside upon that ground. That the same end might have been obtained by an original suit, is clear. The doubt in such cases has been, not whether a court of equity has jurisdiction to set aside the judgment in a suit instituted for that purpose, but whether this equitable power could be exercised by the court in which the judgment is entered, upon motion. (See Brinkerhoof *v.* Warren, 5 *Johns. Ch. R.*, 520.)

If the judgment is defective for the reason assigned, there is no doubt of the right of the plaintiffs to institute this suit for the purpose of setting it aside. So far as the judgment itself is concerned, the object might have been attained by a mere motion; but as the assignment could not have been thus reached, this suit is properly brought to determine at once the validity of both.

Our next inquiry, then, relates to the validity of the assignment. The last paragraph of this document declares that it is made *in trust*, that the assignees shall collect such debts as are collectable, and compromise such as are doubtful, "and apply the proceeds to the following purpose; that is to say :—*First.* To pay any such sum or sums of money as they may find proper and expedient, in and about the management of the said property, or payment of hands employed, or to be employed, in or about the same, or in the business of completing the manufacture of any of the said property, or fitting the same for sale or working up materials, &c., so as to realize the greatest possible amount of money therefrom, as in the judgment of the said John Hecker and George Hecker shall seem most advisable," &c.

It is insisted that this clause, which virtually authorized the trustees to complete the manufacture of any unfinished machines, and to carry on the business of the assignor, for the purpose of working up the materials on hand, renders the assignment fraudulent and void, as to creditors. General assignments in trust for the payment of debts are, for the most part, an American device. In England, such an assignment by a trader, —a term which is held to embrace every man of business,—is considered an act of bankruptcy ; and the commission issued

supersedes the assignment. The history of these assignments in this State tends to show that they were originally an invention by debtors in failing circumstances, designed, not for the benefit of their creditors, but to perpetuate their own control over the property in their hands.

Our courts have been successively called upon to condemn as fraudulent assignments reserving to the debtor either some portion of the assigned property, or a power of revocation of the trust; or of future direction of the trust fund; or requiring the creditor to release the debtor, as a condition of sharing in the proceeds of the property; or authorizing the assignee to sell upon credit, &c. But when purified of all these badges of fraud, there is still some difficulty in sustaining such assignments upon principle, and in the face of the statute (2 *Rev. Stats.*, 137, § 1), because they manifestly tend to delay and hinder those creditors who are disposed to pursue their legal remedies against the debtor's property.

The argument in favor of voluntary assignments would be greatly strengthened, if, when resorted to, they were made to answer the ends of a commission in bankruptcy, by producing ratable distribution of the fund among all the creditors; since, in that case, the principle that *equality is equity* might be urged in opposition to a claim founded upon a priority of legal right. But instead of this, the creditor who is in advance of all others, in respect to his legal rights, may be put in the last class, or may be even postponed to all others. I make these suggestions, not for the purpose of throwing doubts upon the validity of assignments when properly made, but to show that they should not be permitted to substitute the will of the debtor or of his assignees, or even their discretion, for the judgment of the courts, as to the time or manner of appropriating the property of such debtor to the payment of his debts, beyond what necessarily results from its being placed in the hands of trustees for that purpose.

The respondents in this case rely upon the decision of the late Court of Errors, in the case of Cunningham *a.* Freeborn (11 *Wend.*, 241). It must be conceded that if all the members of the court who voted to affirm the decree in that case are to be understood as concurring in what was said by Chief-justice Nelson, the decision is a direct authority in favor of the respond-

Dunham *a.* Waterman.

ents upon the points raised here; and although other important questions were there presented, upon some of which the case might have turned, yet as no member of the court expressed any dissent, or intimated any other ground for his decision, it should perhaps be assumed that the opinion delivered expressed the views of the majority of the court. It will be found impossible, however, to reconcile these views with those since expressed by this court in several cases, and particularly in that of Nicholson *a.* Leavitt (2 *Seld.*, 510). The whole reasoning of Gardiner, J., in that case, in which it appears that five at least of his associates concurred, is in direct hostility to the decision in Cunningham *a.* Freeborn. Upon the point we are considering, he says: "It has always been understood that where an individual has incurred an obligation to pay money, the *time* of payment was an especial part of the contract; that when it arrived, the law demanded an immediate appropriation by the debtor of his property in discharge of his liability, and if he failed, would itself, by its own process, compel a performance of the duty. The debtor, by the condition of a trust, may direct the application of his property, and may devolve the duty of making the appropriation upon a trustee. This the law permits, *and such delay as may be necessary for that purpose.* But the debtor cannot, in this way, avoid the obligation of immediate payment, or extend the period of credit, without the assent of the creditor. The attempt to do this, however plausible the pretence, is in conscience and in law a fraud, and nothing else."

These remarks were made in reference to an assignment which contained a clause authorizing the assignee to sell upon credit; but they apply with equal force to the case before the court. The principle asserted is, that the debtor can authorize no delay whatever, except such as is necessarily incidental to the creation of the trust. In another part of his opinion, Judge Gardiner, in speaking of the right of a debtor to prefer one creditor to another, and to make a voluntary assignment, says: "Of course the delay to creditors, necessarily resulting from a fair exercise of these rights, is not prohibited by any statute; but this delay must be incidental, and necessary to the existence of the trust, or the exercise of the power." It is obvious that the delay consequent upon vesting in the trustee a discretionary

power to continue the business of the debtor, whatever may be the motives, may be as great as that produced by a power to sell upon credit; indeed, it may be regarded as more objectionable in this respect, for the reason that, in case of a sale upon credit, the security taken may be immediately sold and converted into cash, in place of the property it represents.

The question, then, is presented, whether this court will adhere to the spirit of its own decision, in the case of Nicholson a. Leavitt, or, by following the case of Cunningham a. Freeborn, uphold assignments in one class of cases, and condemn them in another, where no shadow of difference in principle exists between them. I may remark, that, since that case was decided, various cases have arisen in this State, in which the principles applicable to voluntary assignments have received a more thorough examination than had previously been bestowed upon them; and the tendency of the courts has uniformly been to a more and more rigid limitation of the discretionary powers to be vested in the assignee. To follow the case of Cunningham a. Freeborn now, therefore, would not only produce the incongruity in doctrine which has been pointed out, but would be an act of decided retrogression in respect to the principles applicable to this class of cases.

It is said, if manufactured articles are assigned in such a state that it is obvious that, by a comparatively small expenditure of money in completing them, their value will be very greatly increased, it would be the duty of the trustee to make the expenditure for the sake of the creditors; and it is insisted that what the law would justify the assignee in doing, without authority from the assignor, he may be expressly authorized to do.

This position overlooks the distinction between a duty imposed *by law* and a power conferred by an individual. The first would be under the entire control of the courts. If an assignee should err in the exercise of that legal discretion, which is incident to his trust, the courts, on application of the creditors, could correct the error. If the sale of the assigned property was unreasonably delayed, the courts could hasten it. Not so, however, in regard to a discretionary power, expressly vested in him by the assignment. Nothing short of fraud, or want of good faith in the exercise of such a power, would authorize the courts

to interfere. If an assignment containing such a clause is held valid, it must of course be held that the debtor has a right to confer the power—that is, has a right to vest this power in the assignee, *as a condition* upon which he parts with his rights of property. If the courts uphold this condition, must they not execute it? Can they substitute their discretion for that which the owner of the property has vested in the assignee? This question was considered in the case of Nicholson *a.* Leavitt; and Gardiner, J., there says : " If the debtor can create such a trust, equity cannot interpolate a provision that the fund shall be disposed of, and the money realized, according *to the discretion of a chancellor.*"

This position, of the correctness of which I entertain no doubt, is fatal to the assumption that such a discretionary power as that here conferred can be upheld. If the court cannot control, or interfere with such a discretion, unless it is fraudulently exercised, then the creditors may be kept at bay so long as the assignee selected by the failing debtor himself may deem it expedient to retain the management of the assigned property. This can never be tolerated. The true principles applicable to all such cases is, that a debtor who makes a voluntary assignment for the benefit of his creditors, may direct, *in general terms*, a sale of the property and collection of the dues assigned ; and may also direct upon what debts, and in what order, the proceeds shall be applied ; but beyond this, can prescribe *no condition whatever* as to the management or disposition of the assigned property. In all other respects, the assignee must be left to act under the ordinary rules and principles which apply to trustees in analogous cases.*

---

* Hotop *a.* Durant (*New York Common Pleas, Special Term, April*, 1858). This was a creditor's action, brought to set aside a general assignment for the benefit of creditors made by two of the defendants to the defendant Durant, and to reach the assigned property. The plaintiff now moved for a continuance of the temporary injunction, and the appointment of a receiver. The facts appear in the opinion.

Hilton, J.—The plaintiff, a judgment creditor of the defendants Dill and Arbuckle, brings this action to have a general assignment, heretofore executed by them to the defendant Durant for the benefit of the creditors of the firm of Arbuckle & Co., set aside and declared fraudulent and void, upon the ground that it was intended to hinder, delay, and defraud such creditors.

A temporary injunction having been granted, the plaintiff upon this motion asks to have it continued until the trial ; and, also, that a receiver be appointed

There is still another question which must be briefly examined. Section 4 of the statute concerning fraudulent conveyances provides that in all cases arising under that act, the question of fraudulent intent " shall be deemed a question of fact, and not

of the partnership property, which came into the hands of the assignee Durant by virtue of the assignment.

To entitle the plaintiff to provisional remedies of so stringent a nature, he must show, presumptively at least, that on the trial of the action he will be entitled to the relief he demands by his complaint. He must not only show an apparent right to the property which is the subject of the action, but, in addition, must make it appear that the property is in danger of being lost, or materially injured or impaired, pending the litigation. (Wordsworth *a.* Lyon, 5 *How. Pr. R.*, 463 ; Corning *a.* Troy Iron and Nail Factory, 6 *Ib.*, 89 ; Ward *a.* Dewey, 7 *Ib.*, 17 ; Goodyear *a.* Betts, 7 *Ib.*, 187 ; Newstadt *a.* Joel, 12 *N. Y. Leg. Obs.*, 148 ; Austin *a.* Chapman, 11 *Ib.*, 103 ; Hamilton *a.* The Accessory Transit Company, 3 *Abbotts' Pr. R.*, 253 ; Patten *a.* The Accessory Transit Company, 4 *Abbotts' Pr. R.*, 139 ; S. C. at General Term, 4 *Ib.*, 235 ; Code, § 244.)

In this case the assignment is in the usual form, transferring all the property of the firm to the defendant Durant, in trust for the benefit of the creditors of Arbuckle & Co., with certain preferences. No presumption of fraud arises from the form of the instrument, and its alleged fraudulent character can, therefore, only be inferred or presumed, from proof of its having been accompanied by such acts of the parties to · it, as must necessarily induce the belief that it was made with a fraudulent intent.

Here, all the allegations of fraud in the complaint which entitle the plaintiff to any equitable relief, are denied by the affidavits and answer on the part of the defendants ; and the only proof in the case upon which the plaintiff relies to establish the fraudulent intent of the parties to this assignment, consists of the acts of the assignee subsequent to its execution and delivery.

It appears that he has sold a large part of the assigned property upon credit ; that he has employed one of the assignees to assist him in the performance of his duties ; that he has needlessly delayed closing up his trust ; and, it is claimed, has expended as assignee, in the employment of a number of clerks, and in occupying a costly store at a large rent, a much greater sum than was necessary.

If this were a proceeding on behalf of a creditor claiming under and not in opposition to the assignment, to remove the assignee upon the ground of improper conduct, or for neglect or violation of duty, these acts might be taken into consideration ; but in an action of this nature, by a creditor claiming adverse to the assignment, they do not, standing alone, raise a presumption that the assignment was made with a fraudulent intent ; and especially is such a presumption unwarranted when it appears, as it does in this case, that the assignee not only intended no wrong, but supposed that he was doing his duty, and believed he was acting for the best interests of the creditors of the firm.

Besides all this, it is shown that he is a man of integrity and responsibility, and this alone would be a sufficient reason for refusing to appoint a receiver ; and as the material allegations in the complaint are denied, it follows that the plaintiff is not entitled to a continuance of the injunction.

Motion denied.

·of law." (2 *Rev. Stats.*, 137.) It is contended, that by this provision " fraud in law" is abolished; and that the referee having found in express terms that the assignment in question was not ·fraudulent, but was made in good faith, the court cannot now pronounce the assignment fraudulent for matter appearing upon its face.

A question in substance identical with this was presented and passed upon in the case of Cunningham *a.* Freeborn (*supra*); and it would be difficult to meet and dispose of it by reasoning more clear and conclusive than that of Mr. Justice Nelson in that case. He concedes that fraud, in all cases, is a question of ·fact, and that an actual fraudulent intent must be found, either by the jury, or by the tribunal which acts in its place. But he contends that a case may be presented in which a fraudulent intent is so plainly to be inferred from the instrument itself, that no jury would be permitted to disregard the evidence, and where ·it would be the clear duty of the court to set aside a verdict found in opposition to such inference. He says, " It could never have been intended by this statute, nor could it be endured in ·principle or in practice, that the verdict of the jury should be conclusive if against law and evidence." He also shows, that what was called " fraud in law" was not an inference of *actual* fraud, drawn from the provisions of the assignment itself, but was a species of fraud which the law was supposed to *impute* to the party (as he says), " in the absence of any fraudulent intent, and under a concession by the court that there was none." ·This species of fraud, if it ever had any legal existence, which ·he seems to doubt, he concedes is abolished by the statute.

It follows from this reasoning of Mr. Justice Nelson, which I regard as unanswerable, that wherever an assignment contains provisions which are calculated *per se* to hinder, delay, or defraud creditors, although the fraud must be passed upon as a question of fact, it nevertheless becomes the duty of the court to set aside the finding of it, in opposition to the plain inference to be drawn from the face of the instrument. A party must, in ·all cases, be held to have intended that which is the necessary consequence of his acts.

The assignment, therefore, as well as the judgment, is void. It follows, that the judgment of the Superior Court at general ·term should be reversed as to the defendants, Henry Waterman

and John and Henry Hecker.  But in respect to the defendant
Rowell, who did not participate in the fraud, and whose pur-
chase of the goods, for aught that appears, was made in perfect
good faith, it should be affirmed, with costs.  As between the
plaintiffs, and the defendants Waterman and Heckers, costs are
allowed to neither party in this court.